**WAYNE INVESTMENT, INC.,**
**Plaintiff, Appellant,**

v.

**GULF OIL CORPORATION, et al.,**
**Defendants, Appellees.**

No. 84–1099.

United States Court of Appeals,
First Circuit.

Argued May 11, 1984.

Decided July 18, 1984.

---

**12**

Susan F. Brand, Boston, Mass., with whom Alfred J. O'Donovan, III, Boston, Mass., was on brief, for appellant.

John W. Castles 3d, New York City, with whom William P. Casella, Banks Brown, Ellen M. Saideman, New York City, John E. Bailey, Kenneth C. Keener, Houston, Tex., Eleanor D. Acheson, Ropes & Gray, Boston, Mass., and Lord, Day & Lord, New York City, were on brief, for appellees.

Before COFFIN and BOWNES, Circuit Judges, and PETTINE,* Senior District Judge.

COFFIN, Circuit Judge.

Appellant Wayne Investment brought an action against Gulf Oil Corporation (Gulf) alleging that Gulf had violated § 17(a) of the Securities Act of 1933,[1] §§ 10(b) and 14(e) of the Securities Exchange Act of 1934, Mass.Gen.Laws Ann. ch. 93A, and the common law of fraud by making false and misleading statements in connection with a tender offer. The district court dismissed the complaint on the ground that appellant had not met the requirement of Fed.R. Civ.P. 9(b), which provides, "In all aver-

ments of fraud ..., the circumstances constituting the fraud ... shall be stated with particularity." Appellant argues that its complaint and an affidavit it filed in opposition to Gulf's motion to dismiss did set out the fraud claim with sufficient particularity. In addition, appellant argues that its claim under Mass.Gen.Laws Ann. ch. 93A was not subject to the requirements of Fed.R.Civ.P. 9(b), and that it should have been allowed to amend its complaint to allege diversity jurisdiction for this claim. We find that the district court ruled correctly on both of these issues, and we affirm.

On June 17, 1982, Gulf and Cities Service Company (Cities Service) entered into a merger agreement under which Gulf agreed to make an offer of $63.00 per share for approximately 54 percent of the Cities Service common stock. If the offer was successful, Gulf planned to merge Cities Service with a wholly-owned subsidiary of Gulf. Gulf's Offer to Purchase (the Offer) expressly warned, "There can be no assurance that a challenge to the Offer on antitrust grounds will not be made, or if such a challenge is made, what the result will be." The Offer stated that each party would "use its best efforts to cause the Merger to occur." The Offer also provided, however, that Gulf reserved the right to terminate the offer if certain conditions (including an adverse action by a governmental authority) arose, "regardless of the circumstances giving rise to such condition (including any action or inaction by ... Gulf)."

Gulf began to purchase shares of Cities Service on June 22, 1982. During June and July appellant sold a number of put and call options with a September expiration date. On July 29, 1982, the Federal Trade Commission (FTC) obtained a temporary restraining order enjoining the transaction on antitrust grounds. Gulf issued a press release on July 30, 1982, announcing that it intended "to contest the FTC action vigor-

---

* Of the District of Rhode Island, sitting by designation.

1. The district court held that appellants had no private right of action under § 17(a) of the 1933 Act, and appellants have not challenged that ruling.

ously, but at the same time [to] seek to discuss whether there is a reasonable basis for prompt settlement of the action." Appellant closed some of its call options, purchased shares to cover other call options that had been exercised, and left open its position in some of its put options. On August 6, 1982, Gulf announced that it was exercising its right to terminate the merger agreement and tender offer. The price of Cities Service stock fell sharply, and appellant suffered a considerable loss when the September put options were exercised.

Appellant filed a complaint on July 26, 1983, alleging on information and belief that after the Offer to Purchase had been made, various legal and financial developments had made the acquisition of Cities Service a less attractive proposition for Gulf. In consequence, the complaint alleged, Gulf

"pursued a course of fraudulent and unlawful conduct designed to precipitate events which Gulf could argue constituted sufficient conditions to permit Gulf to terminate its obligations under the Merger Agreement and Offer to Purchase. Toward that end, Gulf refused to negotiate or cooperate in good faith with the Federal Trade Commission ("FTC"), as it was required to do under the terms of the Merger Agreement, in order to provoke a lawsuit by the FTC to enjoin the proposed merger and to cause the entry of a court order preventing Gulf from consummating its acquisition of Cities Service stock."

The complaint alleged that the FTC informed Gulf that it had only limited objections to the proposed merger, but that Gulf continued to refuse "to engage in meaningful negotiations with the FTC." The complaint alleged:

"On or about July 30, 1982, while continuing to preserve a means of escaping its obligations under the Merger Agreement and Offer to Purchase and having decided not to perform its obligations under the Merger Agreement and Offer to Purchase, Gulf announced, in a false and misleading press release ("the Press Release"), that it intended to proceed with the merger and that it 'intend[ed] to contest the FTC action vigorously, but at the same time seek to discuss whether there is a reasonable basis for a prompt settlement of the action.' Following the Press Release, Gulf continued to fail and refuse to engage in any meaningful good faith settlement discussions with the FTC."

The allegations of the complaint were supplemented in some respects by appellant's affidavit filed in opposition to Gulf's motion to dismiss. For example, the affidavit specified the number and striking prices of the options appellant had purchased between June and July 1982. The affidavit also stated that the president of Wayne Investment had "read of Gulf's press release on July 30, 1982."

It is well settled that Rule 9 "requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980) (collecting cases). This special pleading requirement provides the defendant with notice of the grounds on which plaintiff's fraud claim rests. *Id.* at 228–29. In addition, in the context of securities litigation, Rule 9

"operates to diminish the possibility that 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence ....'" *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979) (*quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975)).

A number of courts have held that allegations based on "information and belief" do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded. *See, e.g., Se-*

*gal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972); *Duane v. Altenburg,* 297 F.2d 515, 518–19 (7th Cir.1962). The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party. *See Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974); 2A J. Moore, Moore's Federal Practice, ¶ 9.03 at 9–26 (2d ed. 1983).

■ Appellant concedes that its action was filed nearly a year after the withdrawal of Gulf's tender offer, and that its complaint "mirrors allegations in three other actions" filed against Gulf. Although appellant had almost two months in which to respond to defendants' motion to dismiss, it offered nothing more substantial than conclusory allegations of fraud to support its charge that Gulf decided in June not to carry out its promise to use "best efforts" to consummate the merger. The president of Wayne Investment stated in his affidavit that he had "no direct knowledge of the negotiations, agreements and other dealings between Gulf and Cities Service or between Gulf and the Federal Trade Commission." In support of his belief that Gulf was not carrying on these negotiations in good faith, he offered only the speculations of industry analysts that Gulf had decided consummation of the deal was not to its advantage. Although this information may help to establish a motive for fraud, it does nothing to show that fraud was actually committed. To allow the appellant to proceed with discovery on the basis of these purely speculative allegations of fraud would be to issue a license for a "fishing expedition" in uncharted waters.

Appellant's claim that the July 30 press release was false and misleading has at least the support of circumstantial evidence. Gulf issued a press release on July 30 announcing that it intended to try to resolve the antitrust problems, and one week later, on August 6, it withdrew its tender offer. Still, in light of Gulf's explicit statements that it reserved the right to terminate the offer if antitrust problems arose, appellant had to make a stronger factual showing to survive the motion to dismiss. Neither the complaint nor the affidavit reveals in what context appellant "read of" the press release, or whether the account was a verbatim report or a summary of the release's contents. Although the affidavit states that the progress of the tender offer was reported in various financial publications, appellant does not disclose the content of or even identify the articles from which he claims to have gleaned his information—in short, he does not meet the requirement that "the time, place, and content of an alleged false representation" be pleaded with specificity. *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d at 228 (1st Cir.1980).

Appellant pleaded no facts in support of its belief that the FTC "had only limited objections to the proposed merger." Appellant also provided no factual support for its belief that Gulf did not make a good faith effort to resolve the antitrust problems after it issued the press release. *Cf. Credit & Finance Corp. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2d Cir.1981) (holding that "if plaintiffs had merely alleged generally that [the target company] said it would carefully evaluate [the offeror's] proposal when it had no intention of doing so, an allegation that could be made in virtually every rejected tender offer case, the complaint would have been properly dismissed.") We find that the district court properly dismissed the complaint for failure to plead fraud with sufficient particularity.

■ Appellant argues that Mass.Gen. Laws Ann. ch. 93A is not subject to the particularity requirements of Rule 9(b). It contends that even if the federal securities laws claims and common law fraud claim were properly dismissed, it should have been allowed to amend its complaint to allege diversity jurisdiction for its ch. 93A claim. Appellee offers a number of objections to this argument. It argues that it is exempt from liability under section 3(1)(b) of ch. 93A because it derives more than twenty percent of its gross revenue from

transactions in interstate commerce. In addition, it contends that ch. 93A does not apply to securities transactions. We have no need to address these arguments, because we find that appellant never properly moved for leave to amend its complaint.

In its memorandum in opposition to defendants' motion to dismiss, appellant stated in a footnote:

"If the Court should rule in the defendants' favor with respect to all the federal statutory causes of action, the Court would still have jurisdiction over Count IV [the ch. 93A claim] on account of diversity of citizenship.... The plaintiff would request leave to amend to allege the $10,000 amount in controversy."

In its opinion dismissing the complaint for failure to comply with Rule 9(b), the court offered a footnote of its own, indicating that it would not look favorably on a motion to amend:

"The plaintiff indicated it would amend its complaint to charge the pendent claims under the diversity jurisdiction of this Court if the federal claims were to be dismissed. Given the emphasis placed on the federal claims, and the treble damages sanction of the federal claims, as well as the deficiency of the fraud allegations, the common law fraud count should not stand alone in this court."

In its motion for reconsideration of the court's ruling on the Rule 9(b) question, the appellant did include one sentence asking that the court grant it leave to amend the complaint; but this unqualified request, made solely in the context of the argument that the complaint could be made sufficient to meet the requirements of Rule 9(b), did not suffice to revive the question of the jurisdictional amendment.

We do not think the exchange of footnotes, in which the parties and the court speculated on what they would do if faced with the issue, constitutes a motion to amend the complaint sufficient to preserve the issue for appeal. We note that the court's footnote states only that "the common law fraud count should not stand alone in this court"; it says nothing about the proper fate of the ch. 93A claim. Had the appellant formally made and properly supported its motion to amend the complaint, the court might have ruled in its favor. At the very least, the defendant would have had an opportunity to be heard in opposition to the motion to amend, and this court would have a complete record on which to consider the propriety of the district court's disposition of the motion. As the matter stands now, the motion was never made and never denied, so the plaintiff has no ruling from which to appeal.

*The judgment of the district court is affirmed.*